UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH J. VACCARO,

                              Plaintiff,

          -v-

BANK OF AMERICA, N.A.,

                              Defendant.

Case No. 13-CV-2484 (KMK)

OPINION & ORDER

Appearances:

Joseph J. Vaccaro
Greenwich, CT
*Pro Se Plaintiff*

Efrat Cohen, Esq.
Reed Smith, LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

     Joseph J. Vaccaro ("Plaintiff"), proceeding pro se, brings this Action alleging negligence

on the part of Bank of America, N.A. ("Defendant").  (Dkt. No. 49.)  Presently before the Court

is Defendant's Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) (the "Motion").  (Dkt. No. 54.)  For the following reasons, the Motion is

granted.

I.  Background

A.  Factual Background

     Unless otherwise indicated, the following facts are drawn from Plaintiff's Amended

Complaint and taken as true for the purpose of resolving the instant Motion.  This factual

background is supplemented by exhibits submitted along with Defendant's Motion, which the Court may properly consider at this stage.[1]

"[I]n or about April 2008," "Plaintiff . . . entered into an agreement" for the purchase of a boat called "Fiasco" (the "Vessel"). (Am. Compl. 2 (Dkt. No. 49).)[2]  According to the Amended Complaint, he "secured a First Preferred Ship Mortgage for the purchase of [the Vessel] through Defendant" (the "Mortgage"). (*Id.*)[3]  Plaintiff used the Vessel as his primary residence. (*Id.* at 4.)

---

[1] At the motion-to-dismiss stage, "a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and internal quotation marks omitted). Following these principles, the Court considers the underlying mortgage agreement, which is clearly referenced in the Amended Complaint, *see Best v. Bank of Am., N.A.*, No. 14-CV-6546, 2015 WL 5124463, at *1 (E.D.N.Y. Sept. 1, 2015) (considering the defendant's submission of "an affidavit attaching the mortgage, note, assignment of mortgage, and other loan documents issued by [the defendant] to [the plaintiff] . . . because the documents are specifically referenced in, and are integral to, the complaint"), as well as the subsequent agreement by which he assumed those obligations, *see Schlenger v. Fid. Emp'r Servs. Co.*, 785 F. Supp. 2d 317, 350 n.28 (S.D.N.Y. 2011) (considering documents where the "[p]laintiff had actual notice of the[] documents (as evidenced by her signature) and relied on them in drafting her complaint, and relied on them in her [o]pposition to the [m]otion to [d]ismiss" (citation omitted)).  The Court also may properly consider various court documents filed in a related proceeding.  *See Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." (italics omitted)); *Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241, 246 (D. Conn. 2010) ("On a motion to dismiss under Rule 12(b)(6), judicial notice may be taken of other judicial documents that might provide the basis for issue preclusion.").

[2] For the sake of clarity, the Court cites to the electronically generated page numbers stamped at the top of Plaintiff's Amended Complaint.  The Court will do the same when citing to Plaintiff's opposition.

[3] Though the Amended Complaint asserts, without support, that *Plaintiff* purchased the Vessel in 2008 and obtained a ship mortgage, those allegations are directly contradicted by the record, which shows My 65 Azimut Fiasco, Inc. ("My 65") as the mortgagor "owning 100% of

The Mortgage lists My 65 Azimut Fiasco, Inc. ("My 65") as the owner of the Vessel, and the document is signed by "Joanne Rivera, President."  (Decl. of Efrat Cohen in Supp. of Mot. ("Cohen Decl.") Ex. B ("Mortgage") 1, 7 (Dkt. No. 55).)  Pursuant to the Mortgage, the Vessel was to be used for "Pleasure Use Only," (*id.* at 2), and could not be used as a "principal dwelling" unless agreed to in writing by Defendant, (*id.* at 4).  The document further provides that the borrower would "be in default under this Mortgage" for "us[ing] the Vessel for a purpose other than as stated in this Mortgage."  (*Id.* at 5.)  The borrower would also be deemed "in default" for other breaches, including if "any payment or any other sum [were] not paid when it [was] due."  (*Id.*)  In the event of such default, Defendant had the right, inter alia, to "repossess the Vessel, together with anything in or on the Vessel, with or without legal process or judicial decree and with or without previous notice or demand for performance."  (*Id.*)  Under such circumstances, personal belongings could be claimed by notifying Defendant within 48 hours of non-judicial repossession and then retrieving the items within 30 days.  (*Id.* at 6.)  The Mortgage

---

the Vessel."  (Decl. of Efrat Cohen in Supp. of Mot. ("Cohen Decl.") Ex. B ("Mortgage") 1 (Dkt. No. 55).)  "[W]here a conclusory allegation in the complaint is contradicted by a document . . . , the document controls[,] and the allegation is not accepted as true."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).  None of the exhibits submitted by Plaintiff as part of his opposition salvage this contradiction.  Notably, the "Buyer's Closing Statement" identifies My 65, *not* Plaintiff, as the purchaser of the Vessel.  (*See* Pl.'s Opp'n to Def.'s Mot ("Pl.'s Opp'n") Ex. 3 (Dkt. No. 58).)  While the "Purchase & Sale Agreement" lists Plaintiff as the buyer of the Vessel, the exhibit is not signed by the seller, (*see* Pl.'s Opp'n Ex. 2), thus raising questions as to its authenticity.  Moreover, these documents presumably were in Plaintiff's possession, or at least accessible to him, at the time he first filed an action relating to the survey of the Vessel, yet he evidently chose not to make use of them during that opportunity to litigate this issue in 2009.  (*See* Cohen Decl. Ex. G.)  Relying on documentary evidence as well as Plaintiff's deposition, the federal court found that "My 65 . . . was the sole purchaser and owner of the [Vessel]."  (*Id.* at 3.)  Here, the Court has the additional benefit of an assumption agreement whereby Plaintiff voluntarily assumed the debt in 2011, (*see* Cohen Decl. Ex. C), a fact that necessarily (and further) belies his claim of ownership in 2008.

further authorizes Defendant to charge to the loan account any costs and fees incurred in the repossession.  (*Id.* at 5.)

Plaintiff claims that Defendant required a survey of the Vessel "as a contingency" of extending the Mortgage and provided only one name on its list of approved surveyors.  (Am. Compl. 2.)  "[Plaintiff] was not offered a minimum of 3 surveyors to choose from," and David Boersema, Defendant's chosen surveyor, "was not an ACCREDITED MARINE SURVEYOR®."  (*Id.*)  Plaintiff "requested permission to use his own surveyor, Jim Dias," upon whose surveys he had relied in "all his previous boat purchases."  (*Id.* at 3.)[4]  He previously had "declined . . . countless numbers of potential boat purchases" based on surveys conducted by Jim Dias.  (*Id.*)  According to the Amended Complaint, David Boersema completed "an inadequate survey," and Plaintiff would not have purchased the Vessel "[h]ad a proper survey been completed," i.e. "[h]ad Jim Dias completed the survey."  (*Id.*)  Within 16 hours of purchase in 2008, the Vessel "sustained a catastrophic engine failure," which Plaintiff alleges "is directly related" to Defendant's "negligence" regarding the survey.  (*Id.*)  The Vessel remained in Michigan until October 2010.  (*Id.*)

On or about February 19, 2009, Plaintiff commenced an action in this District, seeking damages in relation to the purportedly negligent survey against the seller and the surveyor of the Vessel.  (Cohen Decl. Ex. E ("Prior Compl.").)  The case against the surveyor was transferred to the United States District Court for the Western District on Michigan on or about January 8, 2010 (the "Michigan Action").  (Cohen Decl. Ex. F.)  On February 17, 2011, the court in the Michigan Action found that Plaintiff lacked standing to bring claims relating to "the allegedly

---

[4] The Court observes that nowhere does the Amended Complaint allege that Defendant prevented Plaintiff from using his own surveyor.  (*See generally* Am. Compl.)

improper inspection" of the Vessel.  (Cohen Decl. Ex. G ("Michigan Order") 2, 4.)  The Michigan Order specifically held that "My 65 . . . was the sole purchaser and owner of the [Vessel]" and that "all damages claimed . . . [were] those of the owner of the [Vessel]."  (*Id.* at 3.)  To that end, Plaintiff individually could not "claim such damages successfully, because he individually did not purchase or own the [Vessel]."  (*Id.*)

On or about May 19, 2011, Plaintiff entered into an agreement with Defendant whereby he "agree[d] to be liable for all of the promises and obligations contained in the documents evidencing the Loan"—i.e. the Mortgage—and "assume[d] all of the obligations under those documents to which [My 65] [wa]s liable."  (Cohen Decl. Ex. C ("Assumption Agreement") 2.)[5] Defendant then advised Plaintiff of the acceptance of the Assumption Agreement on or about July 8, 2011.  (*Id.* at 1.)

Defendant ultimately repossessed the Vessel, (*see generally* Am. Compl.), but "did not issue an official 'Notice of Eviction' prior to taking possession of [the Vessel]," along with some of Plaintiff's personal belongings, (*id.* at 4.)[6]  Nor did any "foreclosure proceeding . . . follow." (*Id.*)  According to the Amended Complaint, Defendant "failed to properly inventory [Plaintiff's] personal belongings" and incorrectly advanced funds to pay yacht club fees "for dockage that did not take place and was not owed" as well as "for services that were paid by [Plaintiff]."  (*Id.*)

B.  Procedural Background

Plaintiff commenced this Action on April 12, 2013.  (Dkt. No. 1.)  On June 13, 2014, Defendant filed a Motion To Dismiss the Complaint, along with supporting papers.  (Dkt. Nos.

---

[5] When citing to the Assumption Agreement, the Court will refer to the ECF-generated page numbers that appear across the top of the document.

[6] The Amended Complaint does not specify when the repossession took place.  (*See generally* Am. Compl.)

29–32.)  Plaintiff sent Defendant his response on or about August 15, 2014.  (Dkt. No. 38; *see also* Dkt. Nos. 36–37.)  The Court heard oral argument on March 19, 2015, (*see* Dkt. (minute entry for Mar. 19, 2015)), then denied Defendant's Motion To Dismiss without prejudice and granted Plaintiff leave to file an amended complaint by no later than May 19, 2015, (Dkt. No. 43).

After a number of extensions from the Court, (*see* Dkt. Nos. 44–45, 48), Plaintiff filed his Amended Complaint on August 5, 2015, (Dkt. No. 49).  Pursuant to a Scheduling Order adopted by the Court, (Dkt. No. 53), Defendant filed its Motion and supporting papers on October 29, 2015, (Dkt. Nos. 54–57), Plaintiff filed his opposition on or about December 2, 2015, (Dkt. No. 58), and Defendant filed its reply on December 14, 2015, (Dkt. No. 60).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

6

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

    B.  Analysis

    Plaintiff alleges that Defendant was negligent with respect to three events.  First, he contends that Defendant's chosen surveyor was not an "ACCREDITED MARINE SURVEYOR®" and conducted "an inadequate survey" of the Vessel at Defendant's behest. (Am. Compl. 2–3.)  According to the Amended Complaint, because the survey did not accurately assess the condition of the Vessel, Defendant is responsible for the Vessel's engine problems. (*Id.* at 3.)  Second, Plaintiff complains that Defendant repossessed the Vessel without first providing notice and also failed to properly inventory his personal belongings.  (*Id.* at 4.)  Third, Plaintiff asserts that Defendant incorrectly advanced funds to pay yacht club fees and services. (*Id.*)

    Defendant seeks to dismiss the Amended Complaint in its entirety.  (*See* Mot. (Dkt. No. 54).)  It first argues that the doctrine of collateral estoppel bars Plaintiff's survey-related claim, which, in any event, is untimely.  (*See* Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") 1, 7–8 (Dkt. No. 56).)  Defendant further maintains that Plaintiff's allegations fail to satisfy "the threshold requirements of a negligence claim"—namely, "a legal duty or a breach of that duty." (*Id.* at 1; *see also id.* at 2, 8–11.)

8

1.  Collateral Estoppel

Defendant argues that "insofar as [Plaintiff's] claim relates to the 2008 marine survey of the Vessel, the claim is barred by collateral estoppel, as the issue of the marine survey was already litigated in [a] prior action."  (*Id.* at 7.)

The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit."  *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)).  Also known as issue preclusion, collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *see also Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 226 (E.D.N.Y. 2010) (same).  To this end, courts "may dismiss a claim on res judicata or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment."  *Umar Oriental Rugs*, 757 F. Supp. 2d at 223 (italics omitted); *see also Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241, 246 (D. Conn. 2010) ("Although commentators disagree about the propriety of raising issue preclusion on a motion to dismiss, the rule in the Second Circuit is to allow such a motion." (footnote omitted) (citing, inter alia, *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86–87 (2d Cir. 2000))).  Though on a motion to dismiss a court generally must accept as true a plaintiff's factual allegations and draw all reasonable inferences drawn in

9

his favor, *see Erickson*, 551 U.S. at 94; *Daniel*, 992 F. Supp. 2d at 304 n.1, "collateral estoppel will nonetheless bar a plaintiff's claim when the plaintiff's factual allegations have been decided otherwise in previous litigation," *Poindexter v. Cash Money Records*, No. 13-CV-1155, 2014 WL 818955, at \*3 (S.D.N.Y. Mar. 3, 2014) (internal quotation marks omitted).

Under federal law, collateral estoppel will apply where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation marks omitted).[7] The requirement that the issue in question be necessarily decided in the previous case, however, does not mean that the prior decision must "have been explicit . . . if by necessary implication it is contained in that which has been explicitly decided." *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) (alteration and internal quotation marks omitted). Additionally, whereas "the party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment," *Can*, 711 F. Supp. 2d at 246 (quoting *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997)), "the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing the application of issue preclusion," *id.* (alteration omitted) (quoting *Kulak v. City of N.Y.*, 88 F.3d 63, 72 (2d Cir. 1996)).

As noted above, the Michigan Order held that My 65 was the sole owner of the Vessel and the only party that could be entitled to damages relating to the survey. (Michigan Order 3–

---

[7] It is well established that federal principles of collateral estoppel apply to determine the preclusive effect of a prior federal judgment. *See Ball*, 451 F.3d at 69; *Umar Oriental Rugs*, 757 F. Supp. 2d at 223 n.2.

4.)  Finding that Plaintiff had no standing to bring claims related to the survey because "he individually did not purchase or own the [Vessel]," (*id.* at 3), the Michigan court entered judgment in favor of the surveyor, (*id.* at 4).[8]

Here, the Court is presented with the same underlying question of whether Plaintiff can pursue claims based on the purchase and survey of the Vessel, the exact issue litigated and decided in the Michigan Action.  (*Compare* Am. Compl. 3–4 (alleging that Defendant's negligence in relation to the survey "has put [Plaintiff] in this position" and "seeking general, compensatory, and special damages" as a result), *with* Prior Compl. 3–5 (seeking damages as a result of an allegedly inadequate survey of the Vessel), *and* Michigan Order 3–4 (finding that Plaintiff was "not entitled to damages claimed" as a result of the allegedly defective survey).)  Plaintiff offers no real opposition in this regard, merely asserting that "what was made clear . . . was that [he could] re-file and . . . had 7 years to do so."  (Pl.'s Opp'n to Def.'s Mot ("Pl.'s Opp'n") 5 (Dkt. No. 58).)[9]  However, not only does this bare assertion in no way contest that the issue of standing was necessarily decided by the Michigan Order, but also there is nothing in the record to suggest Plaintiff would be permitted to re-file his claims in a personal capacity.  Quite the contrary, the Michigan court concluded that My 65 was "the *only* party that

---

[8] The Michigan court also rejected the notion that Plaintiff could be damaged by the survey as a result of his subsequent acquisition of the Vessel, finding that the evidence did not establish a link between the claimed inspection deficiencies and later engine problems.  (*See* Prior Order 3–4.)

[9] Though not an argument made by Plaintiff, it nonetheless bears mention that the fact the Michigan Action was brought against a different defendant will not avoid the application of collateral estoppel presently.  *See LaFleur v. Whitman*, 300 F.3d 256, 274 (2d Cir. 2002) (holding that the proper inquiry with respect to collateral estoppel is "*not* whether the []defendants were identical in both cases"); *Crown v. Danby Fire Dist.*, — F. Supp. 3d —, 2016 WL 1275651, at *5 (N.D.N.Y. Mar. 31, 2016) ("[C]ollateral estoppel may bar relitigation of an issue even against different defendants, provided that the issue in contention was necessary to the result reached in the prior proceeding." (internal quotation marks omitted)).

could be entitled to the damages claimed," (Michigan Order 4 (emphasis added))—namely, for expenses resulting from "the allegedly improper inspection," (*id.* at 2).[10]  This Court thus finds the first and second requirements met here, especially given that courts in the Second Circuit routinely apply collateral estoppel to the issue of standing.  *See Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 361, 363 (S.D.N.Y. 2014) (finding "all of the requirements of collateral estoppel met" where the "[c]ourt [wa]s presented with the same issue of whether [the] [p]laintiff ha[d] standing to pursue his . . . claims"); *Poindexter*, 2014 WL 818955, at *4–6 (finding the plaintiff collaterally estopped where a prior determination rejected his claim of copyright ownership and found that he lacked standing to sue); *Hollander v. Members of The Bd. of Regents of The Univ. of the State of N.Y.*, No. 10-CV-9277, 2011 WL 5222912, at *2 (S.D.N.Y. Oct. 31, 2011) (applying collateral estoppel where a prior court had "decided the issue of [the] [p]laintiff's standing"), *aff'd*, 524 F. App'x 727 (2d Cir. 2013); *New Phone Co. v. N.Y.C. Dep't of Info. Tech. & Telecomms.*, No. 05-CV-1702, 2011 WL 6132256, at *8 (E.D.N.Y. Mar. 7, 2011) (concluding that the "dismissal of the [prior] complaint is given preclusive effect on the standing issue").[11]

---

[10] According to Defendant, only My 65 was given leave to re-file after being dismissed for want of representation.  (*See* Def.'s Reply Mem. of Law in Supp. of Mot. 2 (Dkt. No. 60) (noting "the [Michigan] [c]ourt dismissed My 65 for failure to appear through substitute counsel within the timeframe established" and asserting that Plaintiff "obviously confuses My 65's ability to re-file its claims with his own ability to do so").)

[11] In a seeming attempt to relitigate this issue, Plaintiff argues that he is "the sole shareholder . . . and the alter ego of [My 65]," which existed only to allow him to be eligible for "[a] loan of this magnitude."  (Pl.'s Opp'n 3 (emphasis omitted).)  Even putting aside the doctrine of collateral estoppel, this argument necessarily fails because "it has long been the law of . . . New York and th[e] [Second] Circuit that a corporation cannot pierce the corporate veil it created for its own protection whenever doing so would be to its benefit."  *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 223 (S.D.N.Y. 2005); *see also Carey v. Nat'l Oil Corp.*, 592 F.2d 673, 676 (2d Cir. 1979) (declining to "'pierce the corporate veil' in favor of those who created that veil").  Plaintiff, therefore, cannot establish standing on this basis.  *See, e.g.*,

As for the third requirement, Plaintiff had a "full and fair opportunity" to litigate the standing issue in the Michigan Action, where the parties engaged in discovery and his claims were dismissed only on summary judgment.  (*See* Michigan Order 2–4.)  Such a procedural posture reflects an adequate opportunity to litigate.  *See, e.g. Bronzini v. Classic Sec., LLC*, No. 11-CV-2096, 2012 WL 1681745, at *3 (S.D.N.Y. May 2, 2012) (finding the "[p]laintiff had a full and fair opportunity to litigate" where "the parties conducted discovery and [the] plaintiff's claims were dismissed after summary judgment briefing"); *Schultz v. Tribune ND, Inc.*, No. 10-CV-2652, 2011 WL 4344168, at *8 (E.D.N.Y. Sept. 14, 2011) (concluding that the plaintiff "had a full and fair opportunity to litigate the issue, given that his claim was dismissed only on summary judgment after the parties had engaged in discovery").  Perhaps in an attempt to refute this point, Plaintiff asserts that "[he] had no knowledge of what was going on [in the Michigan Action] and understood nothing of law at that time . . . ."  (Pl.'s Opp'n 5.)  However, "the mere fact that . . . [P]laintiff proceeded pro se does not sufficiently establish that he was denied a full and fair opportunity to be heard, particularly given that he is proceeding in the same manner in the present case."  *Goodson v. Sedlack*, 212 F. Supp. 2d 255, 258 (S.D.N.Y. 2002) (alteration, italics, citation, and internal quotation marks omitted); *see also Ajamian v. Nimeh*, No. 16-CV-145, 2016 WL 3948067, at *4 (E.D.N.Y. July 19, 2016) ("[T]he doctrines of res judicata and collateral estoppel apply to pro se litigants." (italics omitted)); *Rivera v. Patnode*, No. 11-CV-532, 2012 WL 1029661, at *5 (N.D.N.Y. Mar. 26, 2012) ("[E]ven though [the] plaintiff

---

*Feinberg v. Katz*, No. 99-CV-45, 2002 WL 1751135, at *6 (S.D.N.Y. July 26, 2002) (finding that a company "and its sole shareholder cannot bring claims to recover for damages incurred by its subsidiary"); *Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co.*, 861 F. Supp. 179, 181 (E.D.N.Y. 1994) (finding that, although the real party in interest was perhaps "merely a shell corporation" for the plaintiff-corporation, the plaintiff-corporation lacked standing to sue because "[a] corporation may not pierce the veil of another corporation that it set up for its own benefit in order to advance the claims of that corporation").

proceeded pro se, [the] plaintiff was afforded a full and fair opportunity to litigate the relevant

issues." (italics omitted)).  His lack of legal knowledge will not satisfy his burden to show the

absence of an adequate opportunity to litigate, and he has alleged no other facts that could do so.

Lastly, it is clear that the issue decided in the prior proceeding was necessary to support

a valid and final judgment on the merits.  The Michigan court's decision that Plaintiff lacked

standing was the basis on which that court dismissed Plaintiff's claims.  (*See* Michigan Order 4

(granting summary judgment in favor of the defendant because "My 65 . . . , the only party that

could be entitled to the damages claimed, was dismissed from the case [previously]").)

Therefore, collateral estoppel precludes Plaintiff from seeking damages with regard to

the survey of the Vessel.[12]

---

[12] In any event, Plaintiff's survey-related claim is barred by the applicable statute of
limitations.  The statute of limitations for a negligence action in New York is three years, N.Y.
C.P.L.R. § 214(5); *see also S.W. ex rel. Marquis-Abrams v. City of N.Y.*, 46 F. Supp. 3d 176, 189
(E.D.N.Y. 2014) (applying three-year statute of limitations to negligence claims), which begins
to accrue on the date of the injury, *see Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp.
2d 317, 337 (E.D.N.Y. 2012) (noting that the limitations period "starts to run when the cause of
action accrues, and that a cause of action for negligence accrues from the date of the injury"
(citation and internal quotation marks omitted)).  Here, the Amended Complaint marks the date
of the injury "on or about April 2008," alleging that the "catastrophic engine failure" occurred
"[a]pproximately 16 running hours after the closing of the purchase of the [Vessel]."  (Am.
Compl. 2–3.)  Plaintiff commenced this Action in April 2013, (*see* Dkt. No. 1), two years after
the expiration of the statute of limitations in spring 2011.  Even if the Michigan Action arguably
tolled the statute of limitations for Plaintiff's claims against the seller and the surveyor of the
Vessel, *see Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 249 (E.D.N.Y. 2012) (noting that
"state laws [may] provide for the tolling of a statute of limitations based on the pendency of a
prior action"), such tolling would not apply in the instant Action against Defendant, as it was not
a party to the prior case, *see Vincent v. Money Store*, 915 F. Supp. 2d 553, 573 (S.D.N.Y. 2013)
(finding that the statute of limitations could not be tolled based on the pendency of a prior action
in which the defendants were never added as parties); *cf. Johnson v. Ry. Express Agency, Inc.*,
421 U.S. 454, 467 (1975) (explaining "the tolling effect given to . . . timely prior filings" as
based on the later action's assertion of "exactly the same cause of action" against a defendant).
As thus made clear on the face of the pleadings, Plaintiff's survey-related claim is time-barred
and subject to dismissal on this alternative ground.  *See Mosdos Chofetz Chaim, Inc. v. RBS
Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the
burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-

2.  Failure to State a Claim

Defendant also seeks dismissal of the Amended Complaint on the basis that Plaintiff's allegations fail to state a claim for negligence.  (*See* Def.'s Mem. 8–11.)

Under New York law, "a plaintiff must establish three elements to prevail on a negligence claim:  (1) the existence of a duty on [the] defendant's part as to [the] plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof."  *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008) (internal quotation marks omitted), *aff'd*, 337 F. App'x 7 (2d Cir. 2009); *see also King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997) ("New York courts require a plaintiff to show:  (1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach.").  "The threshold question in any negligence action is whether the alleged tortfeasor owes a duty of care to the injured party, and the existence and scope of that duty is a legal question for the courts to determine."  *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 121 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Am. Ins. Co. v. City of Jamestown*, 914 F. Supp. 2d 377, 386 (W.D.N.Y. 2012) ("Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." (quoting *Darby v. Compagnie Nat'l Air Fr.*, 753 N.E.2d 160, 162 (N.Y. 2001))).  If "the defendant owes no duty to the plaintiff, the action must fail."  *Diego Beekman Mut. Hous. Ass'n Hous. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C*, No. 15-CV-1094, 2016 WL 1060328, at *4 (S.D.N.Y. Mar. 15, 2016) (internal quotation marks omitted); *see also Lumbermens Mut. Cas. Co. v. Franey Muha*

---

answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alteration and internal quotation marks omitted)).

*Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 304 (S.D.N.Y. 2005) ("It is well-settled that the absence of a duty is fatal to a negligence . . . claim.").

Plaintiff's remaining allegations concern the lack of notice prior to Defendant's repossession of the Vessel, the inventory of Plaintiff's personal belongings contained on the Vessel, and the advancing of fund to cover various costs.  (*See* Am. Compl. 4.)[13]  As an initial matter, Plaintiff fails to identify the source of Defendant's supposed obligations to undertake such steps.[14]  Quite the opposite, the terms of the Mortgage refute the existence of any suggested duty on the part of Defendant.

For one, the Mortgage explicitly provides that the Vessel could not be used as a primary residence and that if the Vessel were used for any purpose other than "pleasure," or if required payments were not made, Defendant could repossess the Vessel "with or without legal process or

---

[13] As the Court has already addressed two independent grounds for rejecting Plaintiff's allegations with respect to the survey of the Vessel, it need not assess whether those allegations meet the requisite elements of a negligence claim.  Nonetheless, the Court pauses to underscore that Defendant extended a loan to My 65, (*see* Mortgage 1, 7), *not* to Plaintiff.  Given that Plaintiff voluntarily assumed the debt in 2011, (*see* Assumption Agreement), some three years after the purchase of the Vessel and "catastrophic engine failure," (Am. Compl. 2–3), the Amended Complaint not only fails to identify a source of some relevant duty owed to Plaintiff by Defendant but also cannot establish that any purported breach by Defendant *caused* injury to Plaintiff, who was not the owner of the Vessel in 2008.

[14] In its sole mention of a "duty," the Amended Complaint alleges that Defendant was "negligent in the approved and appointed surveyor who had a duty to conform to a standard of conduct for the protection of both [Defendant] and [Plaintiff]."  (Am. Compl. 3.)  This syntax suggests it was the surveyor, rather than Defendant, who owed this vague duty.  Regardless, Plaintiff's conclusory assertion as to a duty owed will not suffice to establish this first element of a negligence claim.  *See Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 326–27 (S.D.N.Y. 2012) (dismissing negligence claim where "conclusory assertions of a duty aside, the complaint d[id] not state what duty of care [the] [d]efendants owed, let alone how they breached that duty"); *Pulte Grp., Inc. v. Frank Crystal & Co.*, No. 11-CV-6214, 2012 WL 1372158, at *1 (S.D.N.Y. Apr. 18, 2012) (dismissing negligence claim where "the amended complaint repeatedly allege[d] in entirely conclusory terms that [the defendant] had a duty" but "allege[d] no facts that might give rise to such a duty").

judicial decree and with or without previous notice or demand for performance." (Mortgage 4–5.)[15]  Nonetheless, Plaintiff alleges that his use of the Vessel as a primary residence entitled him to additional process, (*see* Am. Compl. 4), highlighting that he "had a live aboard permit" and that Defendant "had full disclosure that [he] would be living abroad [the Vessel]," (Pl.'s Opp'n 3).  Yet, while he asserts he advised Defendant that he "live[d] on the boat full time" and "[n]ever once was a comment made that [he] could not live aboard the [V]essel," (*id.* at 4), Plaintiff voluntarily assumed the Mortgage, (*see* Assumption Agreement), the plain language of which clearly prohibits such use, (*see* Mortgage 4–5).  Indeed, regardless of whether Plaintiff "always declared that [he] was going to be living aboard the [V]essel," (Pl.'s Opp'n 3), such use constituted a default under the Mortgage, (Mortgage 5), as the Amended Complaint does not allege that Defendant "agree[d] in writing" to allow Plaintiff to use the Vessel as his "principal dwelling," (*see id.* at 4).  Defendant cannot be said to have any eviction duties as to Plaintiff when the Mortgage prohibited Plaintiff from living on the Vessel in the first place.

Nor does the Mortgage create a duty on the part of Defendant to provide an inventory of Plaintiff's personal belongings, and Plaintiff has not explained the source of such a duty.[16]

---

[15] To the extent Plaintiff argues that the "new motors" were not part of the Vessel at the time of purchase, were not secured by the Mortgage, and therefore should not have been repossessed by Defendant, (*see* Pl.'s Opp'n 4 (asserting that "[Plaintiff] had replaced the motors and . . . own[s] the motors in [his] personal name"); *id.* (asserting that "[t]he current motors in [the Vessel] DO NOT LEGALLY BELONG TO [the Vessel]" (emphasis omitted))), the Court notes that the Mortgage specifically defines the word "Vessel" to include "all engines . . . now used in or on the Vessel or which may be used in or on the Vessel, in the future, whether or not removed from the Vessel . . . ." (Mortgage 2.)  Thus, any subsequently installed engines were part of the "Vessel" that Defendant was entitled to repossess in the event of default.  (*See id.* at 5.)

[16] To the extent Plaintiff believes that the terms of the Mortgage created some sort of obligation, the Court notes that "a plaintiff must allege an independent duty that 'spring[s] from circumstances extraneous to, and not constituting elements of, the contract.'"  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 504 (S.D.N.Y. 2013) (alteration in

Notably, the terms of the agreement provide that Plaintiff could have obtained any personal belongings by notifying Defendant within 48 hours of the repossession and subsequently retrieving the items.  (*Id.* at 6.)[17]  That, however, is a far cry from creating any sort of obligation "to properly inventory Plaintiff's belongings," (*see* Am. Compl. 4), let alone any legal duty to do so.

Furthermore, the Mortgage specifically provides that, in the event of default, Defendant has the right to require Plaintiff to pay "all actual and reasonable costs and expenses of," inter alia, "retaking, maintaining," or "storing . . . the Vessel."  (Mortgage 5.)  Pursuant to these terms, Defendant appears to have been well within its rights in advancing funds to cover those costs without consulting Plaintiff.  (*See id.* (authorizing Defendant to "require [the borrower] to pay collection, enforcement[,] and court costs").)  Plaintiff offers no basis for his assertion that Defendant had any sort of duty in relation to the payment of the yacht club fees.  (*Cf.* Pl.'s Opp'n 6 (asserting without explanation that Defendant failed to exercise "due diligence" in determining whether the bills were valid).)[18]  Indeed, the Court cannot imagine a breach of any legal duty where Defendant has acted to enforce its rights under this contractual agreement.

---

original) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987)); *see also 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 220 (S.D.N.Y. 2015) (finding that the plaintiffs failed to state a negligence claim where they did "not allege[] the breach of a legal duty independent from [the] [d]efendant's contractual obligations").

[17] Neither the Amended Complaint nor Plaintiff's opposition papers allege that Plaintiff took these steps to recover his personal belongings within the allotted timeframe.

[18] Plaintiff merely contends that these fees were "fabricated," exaggerated, and/or duplicative.  (*See* Pl.'s Opp'n 6–7.)  His arguments in this regard, however, are quite confusing, as, for example, he simultaneously claims that Defendant paid for services for which he had already paid, (*see* Am. Compl. 4; Pl.'s Opp'n 7), and also that "[t]here are mechanics liens that need to be settled" since he has "not paid anyone," (Pl.'s Opp'n 8).  Regardless, the Amended Complaint has failed to allege the existence of a legal duty regarding these fees and how

On the whole, Plaintiff's allegations merely reiterate that Defendant acted consistent with the terms of the Mortgage.  Because Plaintiff cannot establish that Defendant had a duty to "evict" him prior to the repossession, to provide an inventory, or to exercise "due diligence" with regard to the yacht club fees, his negligence claim necessarily fails.  *See W.A. v. Hendrick Hudson Cent. Sch. Dist. & Kathleen Coughlin*, No. 14-CV-8093, 2016 WL 1274587, at *15 (S.D.N.Y. Mar. 31, 2016) (dismissing negligence claim "[i]n the absence of an identified duty owed to [the] [p]laintiffs themselves"); *Clavizzao v. United States*, 706 F. Supp. 2d 342, 350 (S.D.N.Y. 2009) (dismissing negligence claims for "failing to identify what duty [the defendant] owed [the plaintiffs]" and "how [the defendant] breached that duty"), *motion to vacate denied*, 2010 WL 6836461 (S.D.N.Y. Oct. 25, 2010); *Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, No. 06-CV-8195, 2008 WL 2695090, at *4 (S.D.N.Y. July 8, 2008) (dismissing the plaintiffs' negligence claim where "neither their opposition nor the amended complaint identifies a potential source of . . . a duty").

---

Defendant breached any such duty.  To the extent that Plaintiff believes that certain bills were inflated or improperly charged, he is free to bring a separate action against the yacht club for contribution and/or indemnity.

## III. Conclusion

For the reasons stated above, the Motion is granted with prejudice.[19] The Clerk of the

Court is respectfully requested to terminate the pending Motion, (Dkt. No. 54), and close the

case.

SO ORDERED.

DATED:     September 15, 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[19] Having already given Plaintiff an opportunity to amend his pleadings, (*see* Dkt. No.
43), the Court dismisses the Amended Complaint with prejudice, *see Denny v. Barber*, 576 F.2d
465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around");
*Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar.
29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two
bites at the apple, and they have proven fruitless" (alteration and internal quotation marks
omitted)); *Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30,
2015) (dismissing amended complaint with prejudice where the "[p]laintiff has already been
given one opportunity to amend his complaint . . . , and there is nothing in his second amended
complaint suggesting that [he] could do better given another opportunity"); *Al-Qadaffi v. Servs.
for the Underserved*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015)
(denying leave to amend where "[the plaintiff] already had one chance to amend his [c]omplaint,
and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*,
632 F. App'x 31 (2d Cir. 2016). Plaintiff's ship has sailed.